May it please the court, I am Barry Derryberry, appearing on behalf of the appellant, Sean Gorrell, and I think right at the get-go, there is a threshold issue that is punctuated by the government's 28-J letter, I want to just look at that first, which is citing the recent Bowline case. So, if the issue presented in this appeal is the sort of issue that is required to be presented through Rule 12 and he'd follow the timeliness requirements of that, then there is not a position for me to argue plain error. Plain error would be unavailable under Bowline, so the brief's grappled with that, that's out of the way. And so that gets really to the question, though, is this a Rule 12 issue, if you will? And I think that the first question is, is it the type of motion or does it address the type of issue that is listed, enumerated in Rule 12? The briefing has identified as the most likely suspect a claim that the indictment fails to state an offense. And my argument is that I am not challenging the indictment, I am challenging the jury instructions when, in combination with the verdict form, represents the jury being given the list of enumerated offenses that is incorporated in the element's instruction. And so that is independent of the indictment. Certainly the indictment is the source of those alleged affirmative acts, but the point is that, which differentiates an indictment issue from our issue, the point is that the defendant would have committed an affirmative act as described in the superseding as charged, it says, in the superseding indictment. And so that is not a claim that there's not a charge of an offense. And as well, I only attack a certain number of those affirmative acts in my claim. Very clearly, there's a couple of them that are unassailable and are very, very evidently affirmative acts as alleged. There's no way that anybody could argue what I'm arguing and ever have a hope of walking out of district court pretrial with a quashed indictment. But you're still, I guess I'm struggling a little bit with your argument. It seems to me you're still identifying the defect in the indictment. You call it, somewhere in your briefing, I think you called it partial, a partial defect, right? Or partial, am I getting that wrong? You said it partially fails to stay in offense. That's a defect in the indictment. I don't know how you get around that. If it partially fails to stay I do not know that I could get an indictment quashed because of a couple of affirmative acts that are listed in the indictment when there's other indictments. As long as there are some, two acts. As long as there's some acts that can. And so maybe that's debatable. But, you know, the typical, and here's the thing, I really want to differentiate this because I think this is key. I don't know about what's typical in the run of the mill, but I will contrast what happened, the way the jury was instructed in my case with the way the jury was instructed in Farr. I mean, I looked at Farr, cited in the government's brief, a 2012 case from this court. And the instruction said as to element number three, that the defendant committed an affirmative act in furtherance of his intent to conceal his taxes or evade his taxes. In our case, the difference is the addition of a language that says as charged in the superseding indictment. And so, you know, Mr. Farr would have to challenge his about. But if he's concerned about the jury verdict is incorporating an invalid legal theory in valid legal basis. You know, with my situation, it's different because the indictment was incorporated into element three when the judge said affirmative act as charged in the superseding indictment. Well, and the instruction listed the affirmative acts. Yes or no? The element three does not. Instruction number 18 does not, which is page 117 of the report's record. So the elements instruction does not, but the indictment is replicated within the jury instructions. Okay, so the jury instructions list the affirmative acts. Yes or no? Yes. Okay. But not in the elements instruction as such. It's by reference. I see your point. Yeah. And so to be a rule 12 issue that's required to be raised in rule 12. And by the way, I don't have good cause. That's not an issue here at all for getting around what has to be reasonably available and has to be an issue that could be resolved without a jury trial. And I do not see how those characterizations can be made on my issue. Why couldn't you have raised this much much scenario? It could have certainly not at the appeal stage. Theoretically, they are identical. They're repeated identically. The affirmative acts in the instructions as they were in the indictment. I guess I don't understand. There certainly isn't good cause, but that's the whole idea of the rule is let's get this stuff. If there's a problem with the indictment, let's get out there. Yes, I think it has to do with the nature of this issue. So that and what we're dealing with. So for instance, the claim that the defendant utilized his the tax defense network to do his returns instead of his father who had done his returns in the past. When that's in an indictment and a party goes to the district court and says this does not pass muster under what the affirmative act description is literally what it's defined as. I would think any judge would say I can't I don't know anything about your case. I cannot rule on that. This does not have any context for me. Well, that's why you have instructions is to hopefully the instructions will give us the framework of the case. And if there's a problem with that framework, the defendant is duty bound to object to the instructions as given. And there was no objection here, right? Absolutely no objection. So we're plain error. Yes. And neither of you addressed the third or the fourth prong of plain error. And quite frankly, I don't see how you could meet it. So you better do some fast talking. I don't have research for case law that will bridge me on this. There's no case law that damages me on this. And so the closest I could do was to cite a 10th Circuit case that I look to for analogy, which is that the the issue of insufficient evidence for a conviction, I see the analogy in that as far as any of these individual affirmative acts that I am describing here, if it clearly as a matter of law does not come within the compass of the legal definition of an affirmative act, then that is as to that affirmative act that my client is in the same position as if there was insufficient evidence to support that affirmative act. And Griffin is in this as well, which is that if you have a number of theories of guilt and any of those legal theories of guilt is invalid as a matter of law, then that upsets the entire verdict. And so the existence of affirmative acts that cannot be challenged and that I do not challenge under Griffin does not support the verdict. And so I need to establish the plainness and the fourth prong as to plain error regarding the affirmative acts that I am selecting for challenge. And if they do not fall within the umbrella of the definition of affirmative act as a matter of law, then that shows that the verdict is invalid under Griffin. And so I think that that affects the integrity and fairness of the court to have a conviction that is undermined in that way, because what is not undermined under our established law cannot sustain the conviction. I didn't see it. I guess I'm not seeing where you pointed any plain error. It was there, but it was plain. I don't see in a single case that you cite that has any similarity and understand you're relying on the Supreme Court case to see something. But you're basically saying, well, these aren't like those examples. These four acts aren't like those examples. That doesn't make it plainly erroneous. Those are just examples. Right. What makes the error plain is what I'm asking. I don't see any authority to that effect. Yeah, I cannot find a case that has the same affirmative acts that we have here. So we can only look to the definition of affirmative act, the examples that are given, and that's not a finite list. It can be anything that meets the definition of an affirmative act. But when you look at the idea that he used this tax preparer instead of that tax preparer, that has to be an act that is designed to conceal this tax liability. Well, in the abstract, that does sound thin. But then when you look at the facts presented here, I guess his father, who is an accountant, had for years done his tax returns. And isn't it interesting that suddenly he doesn't use his father? In fact, he uses this group out Florida, who know nothing about his usual business operation or his usual flow of income or expense. Isn't there an indication there of concealment, tax evasion? The tax preparer in Florida was going to have to have his current information and records the same as his father. But he did not provide them all, as we know. Yes. And what was usually seen in the flow of this person's business was not seen, it was not the fact that was occurring in his later practice. There was a difference in how he was conducting his business. There was a difference, but I don't see where the IRS was going to look at that in terms of determining what his tax debt indebtedness is. I mean, as differentiated from the fraud victims, it's IRS that he's supposed to have the intent to mislead. And choosing any reputable tax preparer is not something that is going to mislead the IRS. Well, we've had a lot of cases of tax evasion where we've had perfectly, you know, the best of the best accountants. And there's still been tax evasion because the accountant is only as good as the information given the account. And that is one of the affirmative acts is that he did not provide the information that was necessitated. And so that is not a bone that I'm picking with my appellate issue. So I'm looking at these discreetly because they were enumerated as discreet acts. If the jury had relied on the failure to continue to utilize the same tax preparer that discreetly and in isolation, for all we know, the jury unanimously found that one and did not find any of the others. Although the others, some of them may be very obvious to us. As instructed, the jury could have found the one. And so under Griffin, if that one is not within the compass of the definition of affirmative act as a matter of law, then that upsets the verdict. Thank you. No more questions. Thank you. That's all. May it please the court, counsel. I'm Jeff Gallant, the assistant United States attorney here today to argue the case. I did not try it below. Quite honestly, you've heard a lot of is dispositive. This is it is clear that the issue he has was clear on the face of the indictment. And it's somewhat akin to the case of U.S. versus Madison, which is cited in our briefs that the defendant was arguing about the jury instructions and said, hey, this has nothing to do with the you focus on the error that's being alleged and where it could have been resolved. And what he's arguing about that these affirmative acts are illegal or legally insufficient, that's clear from the time the the superseding indictment is set out. And your honor, it is volume one, page 112, jury instruction number 12, that lays out the affirmative acts. And so his argument that he had to wait for the evidence to come in, even if that's true, a case like Ivorow, which we cite, says, well, they should have raised it then. But in order for him to say he had to wait for the evidence to come in undermines his whole Griffin argument, because Griffin says the kind of error has to be in the stake of law. On page 59 of the opinion, Justice Scalia is very clear. We're not about legal insufficiency. To get to Griffin, the kind of error they contemplate, it has to be in the stake of law. So where he says, oh, I had to wait to see what the evidence would be of these affirmative acts means he can't get within, he can't put the camel through the eye of Griffin. So that is very clear. As far as the affirmative acts, and he's focused on the one about his father, as Judge Briscoe said, in the context of this case, it is very clear that was an affirmative act. And for a number of reasons, not only did he... But when you say context of this case, then you're adopting the idea that we have to wait to hear the evidence before this can be challenged. Well, not at all. Again, I would say what he's saying under Griffin is legally it has to be insufficient. He's asking this court, this panel, to do what the Supreme Court in speeds said it's going to do, what the 10th Circuit has said in Boise, that there's no limit on what can be an affirmative act as long as it's done with the sufficient intent. And we allege that properly. For him to get to Griffin, he has to say something was alleged in the indictment that as a matter of law could not be an affirmative act, which is not what affirmative acts are about. It can be very challenging to the sufficiency of the evidence. Ultimately, but as he's admitted, he loses because some of the affirmative acts like the false return providing false information to the return preparer in Florida were clearly affirmative acts and he's clearly guilty of those. So if it's a legal sufficiency of the argument, he loses under Griffin because Griffin says legal sufficiency as long as one of the prongs, one of the objectives had sufficient evidence, then you sustain the conviction. He has to argue that as a matter of law, as alleged, these could not be affirmative acts, which again goes back to Rule 12 and that's why this is a simple application of Boline. There's no other questions. I give back to Bill. Thank you. Thank you both for your arguments. Case is submitted. Court is in recess until nine o'clock tomorrow morning.